JULIO PAPI *vs.* ANGELO FERRI.

JANUARY 3, 1945.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

- Moss, J. This is an action of the case to recover for personal injuries which were sustained by the plaintiff in a collision between him and a truck then being driven by the defendant westerly on Broadway in the city of Providence. The time was about ten minutes after four o'clock in the afternoon and the weather was clear.

The jury returned a verdict for the plaintiff for $1300; and a motion by the defendant for a new trial was granted by the trial justice, on the grounds that the verdict was against

the evidence and the weight thereof and did not do justice between the parties or truly respond to the merits of the controversy. The case is now before us on the plaintiff's exception to that decision, no other exception being relied upon.

The plaintiff's declaration is in three counts, in each of which he alleges, in substance, that the collision was caused by the negligent operation of the truck by the defendant, without any contributory negligence by the plaintiff.

In the first count the defendant's negligence is specified as driving at excessive speed, in the second as failing to maintain a proper lookout for pedestrians on the street, and in the third as suddenly and obliquely shifting the direction of the truck toward the northerly curb and the spot where the plaintiff was standing and waiting. There is no allegation in any count that at the time of the collision the defendant was driving with the traffic light red for traffic along Broadway.

The plaintiff testified substantially as follows: He had walked in a southerly direction along the westerly sidewalk on Dean street and came to the northwesterly corner of that street and Broadway. He wished to cross the latter street; but the traffic was moving westerly on that side of it, the traffic light being green for such traffic. He turned to his right and walked westerly about fifteen feet on the northerly sidewalk of Broadway. He then stepped off the curb two steps, about two feet southerly, into that street and stopped, facing southerly, with a parked car standing on his right, next to the curb and about seven feet away from him. No evidence was introduced of there being any crosswalk where the plaintiff, according to his testimony, stepped into the street.

The plaintiff then looked to his left, easterly, and saw the light at Dean street turn red for Broadway traffic and saw nothing coming up the latter street from that direction. He next bent down, in back of the parked car on his right, and looked to the west on Broadway to see if there was any traffic

approaching from that direction. Then some machine or truck, coming from the east, struck him and he found himself on the sidewalk, badly injured. Later in his testimony he spoke about seeing a red sedan going toward Olneyville; but where it was is not at all clear. The only testimony that a very short time before he was injured a truck was going west on Broadway, through the intersection, with the traffic light red against it, was that of a girl fourteen years old, who testified that she was looking across that street from a window on the south side of it.

The gist of the defendant's testimony was substantially as follows: As he was driving his truck westerly on Broadway and approaching Dean street, he saw the traffic light at the latter street turn red against him and he stopped his truck before reaching that street, two other cars stopping in front of his. He waited there until that light turned green and then his truck and the other cars were started again westerly on Broadway.

He had meantime seen the plaintiff standing on the sidewalk, a short distance west of the northwest corner of Broadway and Dean street and not far behind a parked car, next to the curb. Very soon after the front of his truck, moving at about seven or eight miles per hour, had passed the place where the plaintiff had been standing he "saw a shadow" coming near his window and he said: "Look out!" He had been looking straight ahead and his truck was ten feet from the sidewalk. He then saw the plaintiff run right into the cab of the truck. The defendant then swerved the truck to the left, brought it to a stop quickly, went to the assistance of the plaintiff and carried him to the sidewalk.

A police officer testified to a written report that he had made at the police station soon after the accident, setting out a statement which he said the defendant had made to him there, when describing the accident. The plaintiff claims that a certain portion of this statement is inconsistent with the defendant's testimony as given at the trial, whereas the

defendant contends that his statement and testimony are consistent throughout.

The trial justice, in his decision, discussed the evidence fairly. He called especial attention to the plaintiff's testimony that when he looked to the west down Broadway and saw the light turn red for traffic on that street, just before he stooped down behind the parked car and looked to the west, he saw no traffic coming from the east. He also discussed the young girl's testimony above stated and said that he did not believe it.

The plaintiff contends that the trial justice erred in his decision, because he based it on the fact that in his judgment the verdict was arrived at as a compromise, since, on the evidence as to damages, if the plaintiff was entitled to any verdict in his favor, he was entitled, on undisputed evidence, to one for a much greater amount than the jury found. It is true that the trial justice in his decision called attention to this feature of the case; but there is nothing to indicate that he based his decision upon it. We therefore are of the opinion that his decision should not be held to be erroneous on that ground.

Upon examination and consideration of the evidence and the decision of the trial justice, we are of the opinion that there is no merit in any of the other grounds urged by the plaintiff in support of his exception, *viz.*: that the trial justice misconceived or overlooked material evidence in arriving at his decision; that as the evidence was conflicting and reasonably open to different conclusions by equally fair-minded persons, it was his duty to sustain the verdict; and that, in deciding as he did, he substituted his personal judgment for that of the jury, in violation of his duty.

After considering these contentions and the authorities cited by the plaintiff as supporting them, and after considering the declaration and the evidence in this case and the decision of the trial justice, we are convinced that he performed his duty according to our well-established rules applicable in such cases and that we cannot properly find

that his decision was clearly erroneous. *Bettencourt* v. *Falvey*, 65 R. I. 171.

The plaintiff's exception is overruled, and the case is remitted to the superior court for a new trial.

*Ormond B. Cook, Coleman Zimmerman,* for plaintiff.
*Louis V. Jackvony,* for defendant.